[No. 2973.  Decided May 17, 1900.]

TRADERS' NATIONAL BANK, *Appellant,* v. WASHINGTON
WATER POWER COMPANY, *Respondent.*

PAROL EVIDENCE—VARIATION OF TERMS OF WRITTEN CONTRACT.

A written contract by defendant, agreeing, in consideration
of the transfer to it by certain shareholders of another corpora-
tion of a given number of shares of stock therein, that it "will
guarantee and save harmless" said shareholders from any and all
indebtedness and obligations of the corporation of evidence in
the records of the company at the date of transfer, is a plain and
unambiguous covenant of indemnity in favor of such sharehold-
ers; and parol evidence is inadmissible for the purpose of estab-
lishing, in a suit by a creditor of such corporation against the
defendant, that the agreement was intended as an absolute
undertaking to pay the indebtedness of such corporation, and
hence made for the benefit of all its creditors, although they
were not parties to the agreement nor in anywise mentioned
therein.

Appeal from Superior Court, Spokane County.—Hon.
LEANDER H. PRATHER, Judge.  Affirmed.

*Graves, Wolf & Graves,* for appellant.

*Thomas C. Griffitts* and *Stephens & Bunn,* for respond-
ent.

The opinion of the court was delivered by

ANDERS, J.—This action was brought by the Traders'
National Bank against the Washington Water Power
Company on two promissory notes which had been exe-
cuted to the bank by the Ross Park Street Railway Com-
pany, the theory of the plaintiff being that the defendant
was liable for the indebtedness evidenced by said notes by
reason of a certain written agreement entered into be-
tween the defendant and certain individuals holding a ma-
jority of the stock of the Ross Park Street Railway Com-
pany.  It is claimed by the plaintiff that the defendant,

by said contract, agreed to assume and pay the existing indebtedness of the Ross Park Street Railway Company; that the contract was made for the benefit of the plaintiff and other creditors, and that, by reason thereof, the plaintiff, though not a party thereto or mentioned therein, has a right to maintain this action against the Water Power Company. The agreement upon which plaintiff's action is based, omitting signatures, is as follows:

"THIS AGREEMENT, Made and entered into this the 3rd day of February, 1892, by and between W. S. Norman of Spokane, Spokane County, Washington, party of the first part, and Horatio N. Belt, Cyrus R. Burns, Sylvester Heath, R. W. Forrest, A. P. Wolverton, E. J. Webster, I. S. Kaufman and Thomas P. Conlan, all of said County and State.

WITNESSETH: That for and in consideration of the sum of One Dollar ($1.00) to each and every of them in hand paid by the party of the first part, the receipt whereof is hereby by each and every of them duly acknowledged, and the covenants and agreements hereinafter entered into by the party of the first part, hereby agree to and with the said party of the first part to deliver or cause to be delivered to the said party of the first part of five hundred and thirty-four shares of stock of the Ross Park Street Railway Company, a corporation duly organized under the laws of Washington, of the par value of One Hundred Dollars ($100) and duly endorsed to the party of the first part or his order.

And the said party of the first part for and in consideration of the covenants hereinbefore entered into by the said parties of the second part, and the receipt of the stock hereinbefore mentioned, agrees to and with the said parties of the second part:

I.   That when said five hundred and thirty four shares of said stock shall have been delivered as aforesaid then the said party of the first part will guarantee and save harmless the said parties of the second part and each of them from any and all indebtedness and obligations of the said Ross Park Street Railway Company, which are of

evidence in the records of the Company at the date hereof, and will undertake the maintenance and operation of said Ross Park Street Railway Company, as now constructed, except on Front and Main streets, which said railway shall be operated by said party of the first part for the term of five years from the date hereof in a first class and substantial manner, and shall give at least twenty minute service over said road during said period, and to make the fare over any and all portions of said road both built and to be built as hereinafter mentioned, including extension hereafter mentioned to Minnehaha Park, not more than five cents for a continuous passage one way.

II.    That said party of the first part will build, equip and put in operation on or before the first day of May, 1892, an extension to said road, running from its present terminus to Minnehaha Park, which said extension shall be built and equipped in a first class and substantial manner, and subject to the provisions of this agreement hereinbefore mentioned as to condition of operation.

III.    That said party of the first part will build, equip and put in operation in one year from the date hereof, if the property owners composing the so-called 'Ross Park Syndicate' so demand, an extension of said road to the Southeast Addition to Ross Park under the terms of an agreement entered into between the said Ross Park Street Railway and the said 'Ross Park Syndicate.'   But should said 'Ross Park Syndicate' not demand that said extension be built within a year from the date hereof, then said party of the first part agrees to build and equip said extension within two years from the date hereof, said extension to be built and equipped in a first class and substantial manner, and subject to the provisions of this agreement hereinbefore mentioned as to the condition of operation and service.

But should said party of the first part so elect then it is especially agreed by and between the parties hereto that said extension to the Southeast Addition to Ross Park shall be made from a point to be selected by the said party of the first part on Sprague Street on the line of the Spokane Street Railway, over and across Section 16, Town-

ship 25, Range 43, to the Southeast Addition to Ross Park, which said extension shall enter said Southeast Addition to Ross Park not further east than K Street, and shall run north and northeast as far as Capitol Street, and said extension as hereinbefore last described shall be accepted by said 'Ross Park Syndicate' as a fulfillment of said hereinbefore mentioned contract.

IV.    That said party of the first part will furnish to said parties of the second part and to each of them or their order two annual passes over the lines of said Ross Park Street Railway and extensions thereof, as hereinbefore mentioned, which said passes shall be issued as aforesaid during each and every year during the life of this agreement.

V.    That said party of the first part will give to said parties of the second part a good and sufficient bond in the sum of $30,000 with the Washington Water Power Company as surety thereon.

IN WITNESS WHEREOF the said parties hereto have caused these presents to be signed and sealed this —— day of February, 1892."

It is claimed by plaintiff that W. S. Norman entered into this agreement as the agent of the defendant and that the defendant was known as the principal in the transaction; and, for the purposes of this case, such may be conceded to be the fact.  In order to connect itself with this agreement, as one of the beneficiaries thereunder, the plaintiff sought to introduce extrinsic evidence, on the ground that the agreement itself was ambiguous, and that such ambiguity necessitated explanation.  After allowing the introduction of some of plaintiff's evidence of surrounding circumstances in explanation of the agreement, and rejecting other evidence offered, the trial court reached the conclusion, in interpreting the contract, that it was plain and unambiguous and that plaintiff's evidence in explanation thereof was calculated to vary and add to its terms.  As the agreement itself, in the view of the trial

court, established no liability of defendant to plaintiff, and as there was no competent and relevant testimony in evidence, showing the assumption by the defendant of the indebtedness of the Ross Park Street Railway Company, the court took the case from the jury and dismissed the action, or, in other words, granted a non-suit. From this judgment the plaintiff appeals, assigning, among others, a number of errors upon the action of the court in refusing to admit testimony.

But, in the view we take of the case, a discussion of the action of the court as to these matters is unnecessary here. The real question to be determined, and which arises at the very threshold of the case, is whether the lower court erred in ruling that the contract for the purchase of the Ross Park Street Railway Company's stock was plain and unambiguous, and that its terms could not be explained by extrinsic evidence. In the interpretation of this contract, we are constrained to yield our assent to the view of it taken by the court below. The particular covenant upon which plaintiff bases its right of action is in the following words:

"That when the said five hundred and thirty four shares of said stock shall have been delivered as aforesaid then the said party of the first part will guarantee and save harmless the said parties of the second part, and each of them, from any and all indebtedness and obligations of the said Ross Park Street Railway Company which are of evidence in the records of the company at the date hereof."

It seems to us that this sets forth in very clear terms a covenant of indemnity in favor of the parties to whom the promise was made against any liability on their part arising out of the obligations or indebtedness of the Ross Park Street Railway Company, in which they were shareholders. The covenant is made to them as individuals, respecting obligations upon which they are only secondarily, if

at all, liable, and which they may in fact never be called upon to pay. The covenant was not made to the corporation itself, and it does not seem reasonable to interpret the agreement as made for the benefit of its creditors. The learned counsel for plaintiff have made a very elaborate and ingenious argument to demonstrate that this contract is ambiguous, because the phrase "guarantee and save harmless" is capable of different constructions, and it is urged, in support of this contention, that the word "guarantee" imports an absolute undertaking to pay the indebtedness mentioned, and that the words "and save harmless" may be rejected. But we do not think we would be warranted, in law, in eliminating a portion of the phrase, and then giving it a meaning different from that imported by the words actually used by the parties to the contract. It seems to us that the effect of the explanatory evidence offered by the defendant would be to create a liability where it clearly appears none existed before. The evidence offered by plaintiff, and excluded by the court, had for its object the establishing of defendant's liability to pay all the indebtedness of the Ross Park Street Railway Company, although defendant had acquired, under its contract with individual shareholders, only about seventy per cent. of the capital stock of that company. The wisdom of the rule forbidding the introduction of parol or extrinsic evidence to vary, add to, or detract from, the terms of a written agreement into which the prior negotiations of the parties have been merged, is apparent in this case. This contract on its face clearly shows that it covenants to indemnify and save harmless the individual shareholders who were parting with their stock from the existing corporate indebtedness. Third parties, that is, those who are not connected with the contract, ought not to be permitted to introduce evidence to change its import, on the sugges-

tion of latent ambiguity, unless it is very apparent that the contract falls within the recognized exception to the rule against the introduction of extrinsic evidence. The expression "guarantee and save harmless" is commonly, if not universally, used in covenants of indemnity. The phrase is tautological, and, taken as a whole, has the same meaning as the words "save harmless" would have if used alone.

We are of the opinion that the judgment of the superior court is correct, and it is therefore affirmed.

GORDON, C. J., and FULLERTON, REAVIS and DUNBAR, JJ., concur.